[Crim. No. 2359.   Second Appellate District, Division Two.—May 23, 1933.]

THE PEOPLE, Respondent, v. ALBERT E. ACREE, Appellant.

Harold D. Kraft for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

CRAIG, J.—An information filed by the district attorney of Los Angeles County charged the appellant and other persons not parties to this appeal in three counts with violations of section 1, chapter 559, of the Statutes of 1929, which directs that moneys or property put up by an employee or applicant as a cash bond shall be held in trust and forbids its use other than for liquidating accounts between the employee and his employer. A verdict of guilty was returned by a jury upon each of said counts.

Applicants for positions as drivers for an automobile stage line appeared at the office of the defendant and one NuDyke, operating under the name of Associated Service Company, in response to newspaper advertisements of the defendants offering employment; they were advised as to the duties required, that the compensation was at least $28 per week, plus a bonus of five per cent, and that other employees were then making about $200 per month. As conditions to em-

ployment it was testified that each applicant was required to pay NuDyke the sum of $400, which he was informed would be held and used by his employers to indemnify them against loss or damage in operation of vehicles or in handling of moneys collected, and directed to sign an agreement entitled "waiver"; he was also told that such contract and employment were not based upon any representation of the Associated Service Company as brokers. It was agreed that a percentage of the revenue from transportation would be refunded each month until repayment of said $400 and that the employer would thereby relieve the employee from that condition of the employment. Each employee also executed a contract in writing to the company which specified that $400 be paid the employer as an investment, and that for said sum the applicant should receive a job as driver at $4 per day. One of the complaining witnesses who signed in blank a check for said amount testified, "Mr. Acree took the check up, and when the check came back it was written 'in cash' and Mr. Acree's name was on it." One of the three drivers received as compensation $20 for about six weeks' work, another $15 during a period of about one month, and the third an average of about $1 per week. The driver last mentioned was informed by Acree "the only chance of getting the money back was to keep quiet and let him hire more drivers and get the money in". One employee was repaid the sum of $20 when demanded, but no other refund was made.

The statute in question provides:

"Any money or property put up by any employee or applicant for employment as a cash bond in any case must not be used for any purpose other than liquidating accounts between the employer and his said employee or for return to the said employee or applicant for employment, and shall be held in trust for this purpose and not mingled with the money or property of the employer who receives same, any provision of any contract between the employer and employee or applicant for employment to the contrary notwithstanding. Any employer or prospective employer, or agent or officer thereof, who misappropriates any such money or property, mingles it with his own or uses it for any other purpose than that set forth above, shall be guilty of theft and shall be punished, upon conviction thereof, in accordance with

the provisions of sections 486, 487, 489, and 490 of the Penal Code.''

■ It is contended by the appellant that the evidence was insufficient to establish his guilt either of embezzlement or of aiding and abetting in the commission of the offense defined by said section.

The question arising from the contention of the People that a cash bond was required of each applicant for employment under a written instrument designedly misleading, and that such funds were unlawfully converted to the use of the appellant and his co-defendants, and that of the appellant that applicants invested the same in fact and were equally answerable for the obligations of their employer under the management and control of the latter, lay peculiarly within the province of the jury under instructions of the trial court. The jury were instructed as to the credibility of witnesses, the weight to be given their testimony and to said documents, and that they must believe beyond a reasonable doubt that the defendant feloniously misappropriated money which the applicants named had put up as a cash bond for return to them, before he could be found guilty of the offenses charged. Hence, resolving all intendments in favor of the verdict and judgment, it may not be determined in such a case that the sufficiency of evidence otherwise abundant fails upon appeal to sustain them because it was capable of different constructions by the jury.

■ Strenuous argument is directed by the appellant to asserted error in the giving of additional instructions upon return of the jury after commencing deliberation. In response to their request as to ''where the responsibility lies in deciding whether these contracts constitute a bond or not'', the appellant's counsel objected upon the ground that the question had been amply covered, though admitting that no instruction had been asked or furnished. The court charged that the jury ''take these contracts into account, and irrespective of what they say, those contracts with all of the evidence that has been before you, and it will then be for you to determine whether the money was placed as an investment or whether it was the intent that it should be put up as a security. The method used in so far as the writing of the contracts is concerned is a matter for you to determine as to whether that was used in the sense of what you

might call an evasion of the law. . . . That is a matter of fact you must determine for yourselves, and on which the court cannot give you the slightest hint". Criticism is aimed principally toward a possible misinterpretation by the jury of such instruction regarding the use of the defendants' contracts. A juror inquired if it might be repeated as to *"that part* of your instructions in which the word 'evasion' was employed". To which the court replied that it was "not in any sense attempting to express an opinion in any manner as to what verdict or verdicts" should be returned, and had the instruction read by the reporter. Since it remained for the jury to decide questions of fact in issue, it cannot be said that they were not entitled to instruction as to their responsibility in relation to documentary evidence introduced by the defendants and upon which they relied during the entire trial for an acquittal. No other instruction was offered upon the subject, nor is it even intimated as to how any right of the appellant was prejudiced by that given.

The constitutionality of the inhibition of use for any purpose other than as a bond or for return to the employee of money so deposited "any contract to the contrary notwithstanding" is not here involved. The issue is not so much what the parties might have agreed as what they did agree to do. The appellant insisted that the transaction constituted an investment as evidenced by said contracts, and it became a question for the jury whether moneys had been invested in accordance with the provisions of contracts which were valid if effective, or, as testified, were demanded and accepted as cash bonds contemporaneously with the exaction in each instance of a pretended and fictitious formal gesture. Upon such question as presented the verdicts are conclusive.

The People called as a witness upon this issue a mechanic from the defendant NuDyke's garage, who testified that the defendant Acree had told him of arrangements being made "so that they could get us boys all satisfied and he thought if we would give him a little bit more time, a few days, that they would have some more men signed up, we would get some of our money"; that "as these men put their money in they would pay us back". This evidence having been stricken out, counsel for the People invoke the

provisions of section 1252 of the Penal Code, which requires consideration of rulings of a trial court when so requested by the attorney-general. It is said that the purpose of such testimony was to show further that the employees' bond-moneys were not held for return, but that they were converted to the defendants' use. It was the theory and contention of the prosecution that a public offense had been committed in that the defendants mingled such funds with their own and were unable to return them. A witness may testify to admissions or to the precise fact in dispute, and it would not have been incompetent evidence for consideration by the jury under proper instructions of the trial court, as tending to show that the appellant was a party to the transaction and had converted the moneys deposited by employees to his own use or had aided in the commission of the offense charged. (Code Civ. Proc., secs. 1832, 1870.)

The judgments are affirmed.

Works, P. J., and Stephens, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 7, 1933.